

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| SUZANNE BROWN, | ) | |
| Petitioner | ) | |
| | ) | Case No. 1:16-CR-00021-JL |
| V. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Respondent | ) | |
| | ) | |

## PETITIONER AFFIDAVIT, DECLARATION IN SUPPORT OF

## MOTION FOR SUMMARY JUDGMENT
## PETITION FOR WRIT OF ERROR CORAM NOBIS
## AND MOTION FOR INTERIM STAY OF SENTENCE
## ON GROUNDS OF ACTUAL INNOCENCE
## (NEW EVIDENCE AND CHANGE IN LAW)

I, Suzanne Brown, Pro Se Petitioner, respectfully submit this declaration under penalty of perjury, pursuant to 28 U.S.C.§ 1746, as follows:

18

1. I am the Movant/Petitioner in this action and the Defendant in associated case 20-cv-00170-JL.

2. I respectfully request that this court grant the Writ of Error Coram Nobis on grounds of significant change in Constitutional law and release of indisputably new evidence; and then rectify this manifest injustice in my favor as a factually innocent person who committed no crime.

3. I have consistently and steadfastly maintained my innocence since I was first questioned about my conduct by USDA managers in January 2013. At that time until now I remain shocked and outraged by the agency's and the Department of Justice/Bureau of Prisons mistreatment of my family and me.

4. I refused to bend to threats of up to 60 years' imprisonment and/or superseding indictments, trial counsel and government pressure to enter a plea "agreement", or promises of home confinement over institutional incarceration (were I to have stipulated to dropping the previous habeas corpus petition).

5. Rather, I have consistently maintained through faith in eventual justice and my relentless dedication and work with counsel that the truth will prevail and that I will be exonerated and vindicated. I was wrongfully incarcerated in one of the worst maximum security prisons in our country.

6. In September 2009, several friends and I founded the New Hampshire Institute of Agriculture and Forestry (NHIAF) as a non-profit organization driven by rigorous business practices in response to what we perceived as existing agricultural services that did not adequately meet the needs of New Hampshire's (mostly very small) farmers; and therefore did not meet the increasing demand for New Hampshire's citizens to access locally-grown food. A small farmer myself, I took the helm as a first-time executive director of the 501(c)(3) non-profit.

7. One of the organizations we noted as slow-moving, unresponsive, biased, and bureaucratic was the United States Department of Agriculture. Notably, as part of the recent Congressional mandates, the agency has recently admitted some of these faults and has expressed its dedication to correcting them. While tactfully critical of USDA's practices I perceived as out of touch and unresponsive to farmers' "boots on the ground", NHIAF nonetheless constructively engaged in work with USDA and was invited to apply for grants to train farmers, set up farming systems, and distribute food statewide (and to bordering states' towns).

8. NHIAF quickly established an incubator on leased land in North Conway to help new farmers get started; grew its own crops to sell in order to largely self-fund the organization; and from scratch (with no compensation) I personally built a web-based farm food sales and distribution software system. Small farmers' requests for free

services statewide were organizationally and personally overwhelming, and we did our best to fulfill every need for support. NHIAF and I received considerable recognition and accolades for our important work.

9. In 2011, in addition to the two grants at issue in this case, I also personally spent many weeks writing an application for a significantly larger USDA grant. The multi-component application was uploaded completely and timely through Grants.gov. However, the USDA grant administrators completely mishandled the application and promptly denied our request for funding that would have benefitted hundreds of New Hampshire farmers, thousands of private citizens, and public institutions across the state (e.g. schools and hospitals).

10. In an attempt to both salvage the grant and also repair/improve the entire online grant application process, I contacted the offices of Senator Jeanne Shaheen, who had been a huge proponent and advocate of NHIAF's work. Senator Shaheen ordered her staff to conduct an independent investigation, culminating in a letter to USDA criticizing the agency for its mishandling of the grant application and highlighting the importance of NHIAF's work to the people of New Hampshire.

11. From that time in 2011 until today, NHIAF and I received extremely hostile treatment and discrimination from the agency. The worst infliction/manifestation of this discrimination—criminal and civil persecution—has ravaged my family and me and

caused us significant hardship— especially my son (now 22, and a senior agricultural sciences major at Cornell University), who has lived with its devastating effects since age nine.

12. Until July 31, 2024, when the third-party determination was released (as mandated by the Inflation Reduction Act of Congress) that USDA discrimination against me has indeed existed in response to my prior civil rights activity (and other reasons), I have been disbelieved, especially by trial counsel, whose ineffective assistance significantly contributed to my wrongful conviction.

13. Upon indictment, less than a year following acquittal in New Hampshire state court for similarly false allegations, I immediately pointed out to the federal public defenders that I was being discriminated against by USDA and the contractors were continuing to defame and blackmail me by putting forth false allegations with the full and enthusiastic backing of the USDA and Department of Justice. I attempted to convince my counsel that the contractors' actions were a continuing attempt to force me to pay them for what they claimed (through their demand letters) they were owed. With their defamation, they had already forced NHIAF into closure.

14. Trial counsel's response to my discrimination and blackmail claims, in spite of submission to them of voluminous supporting evidence, was very much, "Yeah, that's what they all say." As detailed in the pleadings this court authorized me to submit in

22

April 2018 prior to sentencing, trial counsel simply attempted to push me into a plea deal and convince me that I was fighting a losing battle. For the first time in my life I was treated as if I were a stupid criminal. Sadly, this treatment has been the norm now for nearly a decade, especially during incarceration.

15. Trial counsel refused to listen to my explanations of the government-mandated grant administration accounting practices, refused to hire a forensic government accounting expert, or enter into evidence the regulations I provided them. They expressed doubt that the USDA and contractor witnesses could possibly be incorrect and warned me that the government would not only try me for false statements, but also put forth a full-blown fraud case.

16. Trial counsel also refused to include in my defense USDA's hamfisted efforts to cancel my farm microloan from 2014, which was awarded to help my small family farm set up a new maple syrup operation and to teach my then-12-year-old son the sugaring business. When I refused to enter a guilty plea on the criminal charges, within a few months after indictment, my loan was revoked for what USDA called "non-monetary default" for now-documented fabricated reasons. I complained to trial counsel that the government was unjustly pressuring me. They shrugged and told me to just pay back the loan, which I was unable to do because most of the funds had been expended on equipment. I ended up fighting the battle to stop foreclosure of my loan from 2016 to the bitter end, with USDA conceding loan forgiveness in 2022 after I returned home from prison.

17. Pre-trial, I did not know in 2016 what I know now, almost nine years and twelve attorneys later: that I could have asked the Court for competent CJA counsel at the level of expertise and professionalism I am enormously grateful I have since had appointed in both district and appellate courts. At the time, though, I thought if I complained in any way about my attorneys, besides not being believed, I would have had to proceed through trial pro-se, with no idea how to put on a defense or conduct myself in court.

18. It has stung to hear this Court criticize me for struggling to modulate my trial testimony to accommodate ineffective counsel who did not even attempt to understand the fundamental differences between cash and accrual accounting. It was frustrating without regulatory backup evidence to explain to jurors what "in-kind services" are, when my trial counsel refused to enter into evidence the definition of the term. Trial counsel should have been prepared to demonstrate to fair-minded jurors that the regulations mandated a full, fair, and balanced Office of Inspector General (OIG) investigation, instead of a unilateral rush to judgment on false contractor unfounded complaints.

19. I estimate this case, nearly a decade-long, has thus far cost our country more than a million dollars in total government expenditures for the non-crime of $82,000 in *legally* spent grant money. The enormous sum total value of judicial time and effort; investigative and prosecutorial work; the labor of a dozen defense attorneys and the

expert witness; Bureau of Prisons "room and board"; and Probation services is absolutely staggering.

20. At trial, the jurors understandably had doubts and questions. After my honest and effective testimony, the government quickly realized they would need a nullification instruction to secure a conviction. There is no doubt in my mind that if the jurors had had the regulatory resources, expert testimony, AND the now-available indisputable proof that I have been discriminated against by USDA, they would have refused to convict me. On top of that, those jurors needed an instruction from the Court that government agencies <u>must</u> follow Congressional statutes, as well as their own policies and guidelines (Accardi Doctrine). Grant administrators should not get to make up or enforce their own rules that can result in a person's loss of liberty.

21. And at the appellate level, the justices of the First Circuit would have realized that instead of the enormous amount of deference they exhibited toward the grant administrator, the other three USDA witnesses for the prosecution, and the many-times impeached contractors (especially their phony claims of "phony invoices"), that none of those witnesses deserved a scintilla of credibility. The Court of Appeals pointed to an unindicted claim: my signed "certification of compliance with the grant conditions", adjudging it to be false, when in fact at the time I completed and submitted the documentation I was in fact 100% in compliance with the grant conditions as a after of USDA policy and law. Furthermore, the benefit of the forensic accountant's

25

report/testimony would have been invaluable to accurately define "reimbursement" and "expenditures" under the government-mandated accounting rules.

22. Again, the forensic accounting expert employed only after direct appeal could have clarified all of this for the justices. Both the gutting of Chevron deference in favor of Loper Bright and the thankfully still intact Accardi Doctrine, very much two sides of the same coin, compounded with the unavailable-until-now evidence of discrimination would have given the First Circuit Court sound reasons to overturn the wrongful conviction, assuming in the first place that the case even made it past an accurately and adequately informed jury.

23. During habeas corpus proceedings (2020-2021), with the benefit of this new law and evidence, this court would have realized that the forensic accounting expert was 100% correct, and that my reporting of the grant work and results did not at all express (explicitly or implicitly) *any* false statements.

24. Thus, nearly eight years since I was wrongfully convicted, I respectfully request that this Court carefully reconsider and then overturn this entire case, including the eradication of "Chevron-type" deference and acceptance of the proof *admitted by USDA itself* that it has engaged in discrimination against me (and by association—NHIAF, my farm, and my family). I am no criminal, and I do not deserve to live a single day more as a felon with the continuing reputational damage and restrictions from living and working as I wish.

25. Most importantly, it is my fervent request that this May, when my son will have graduated from our country's finest agricultural college, that he will have the opportunity to return to his home state of New Hampshire as a professional farmer with his head held high and without my wrongful conviction holding back his agricultural career and reputation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge. I am competent and willing to testify on the matters stated. Executed at Norfolk, Virginia on this 15th day of December 2024.

Date: December 15, 2024

Respectfully Submitted,

/s/ Suzanne Brown
114 Lake Umbagog
P.O. Box 253
Errol, NH 03579
(603) 828-4860
greatnorthwoodsfarm@gmail.com

**Certificate of Service**

I hereby certify that on this day of December 15, 2024, a copy of the above motion and supporting pleadings was served on United States Attorney Jane E. Young, via First Class United States Postal Mail .

/s/ Suzanne Brown
Suzanne Brown

27